UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 80-475-Cr-COOKE

UNITED STATES OF AMERICA

v.

SYLIANE MANNS,
      Defendant.
_____/

## UNITED STATES' RESPONSE IN OPPOSITION
## TO DEFENDANT'S MOTION TO CORRECT CLERICAL ERROR

      The United States respectfully submits that the defendant's motion to correct clerical error should be denied. The record of this 1980-1981 case shows that there was in fact no error at all, and so nothing to correct. To the extent that the Defendant's motion seeks to persuade the court to reinterpret what was correctly done and recorded three decades ago, this should be rejected both procedurally – the court has no jurisdiction to make such an alteration – and substantively, because the proceedings were correctly handled and recorded at the time.

      The United States has caused a copy of the court record in this case to be retrieved from archives. Although not every proceeding was transcribed, there remains an ample record sufficient to establish what occurred in this case: The defendant, having been arrested body-carrying cocaine as to which she made self-incriminating admissions, raised the only possible defense, which was to seek to suppress the search of her person and the post-arrest statement. When that failed due to denial of the suppression motion, and following evidentiary suppression

1

hearings which developed what would have been essentially the government's case at trial, the defendant waived a jury trial, and stipulated to the factual record that had been made at the suppression hearings as the basis for a bench trial, at which she was convicted of all counts. Apprehensive of the consequences to her immigration status, the defendant did not admit guilt; nor did she plead guilty; instead she persisted in her not-guilty plea and proceeded to trial, albeit a non-jury trial with a readily anticipated prospect of conviction. Thus, the court record correctly reflects that she had a criminal non-jury trial at which she was convicted (unnumbered docket entry following Docket Entry – hereafter "DE" – 25)[1], and that she was found guilty after having pled Not Guilty (DE 37). There being nothing incorrect in the record, the Motion to Correct Clerical Error should be denied.

The above summary is established by the record: Defendant, a Haitian national, was arrested October 3, 1980, at Miami International Airport, upon arriving from South America. A search revealed that she had two packages taped to her legs containing 1,634 grams of cocaine. Following advice of rights, she made post-arrest statements that she had been promised $3,000 to bring cocaine into the United States. *See* transcripts of suppression-motion evidentiary hearings, DE 31 and DE 32.[2]

---

[1] The pre-electronic typed docket sheet is reproduced as electronic Docket Entry 48.

[2] Hearings on the defendant's Motion to Suppress were conducted December 12, 1980 (before Judge Spellman); February 13, 1981 (before Magistrate Judge Palermo); and March 31, 1981 (before Magistrate Judge Palermo). All three hearings were transcribed, and the transcripts are part of the court record, a copy of which has been obtained from archives. Testimony was (footnote continued)

Attorney Eva Wagner Kemper was appointed to represent the defendant. *See* DE (pre-indictment) 3. Counsel, recognizing that the only realistic prospect for defending Ms. Manns against conviction was to suppress the discovery of the drugs and the defendant's admissions, moved to suppress, *see* DE 8, 9, 10; the government opposed the motion, *see* DE 7. Judge Spellman conducted an evidentiary hearing on the motion to suppress December 12, 1980, *see* DE 31 (Attachment 1).

At least as early as the December 12, 1980, hearing, it was clear that the defendant's plan was to seek to suppress the evidence, and, if that failed, to stipulate to the suppression-hearing evidence as the basis for the government's case in chief at a bench trial. The hearing transcript is explicit that this was the understanding before the hearing began. Thus, at the beginning of the hearing the prosecutor distributed Jencks materials as if it were a trial, stating that "since this would be testimony at trial, I will distribute them."[3] *See* DE 31 (Attachment 1), page 2-3.

---

(footnote continued)

taken at the December 12, 1980 (DE 31) and March 31, 1981 (DE 32) hearings; this testimony became the stipulated basis for the bench trial conducted May 21, 1981. The United States is filing copies of all three transcripts as attachments to this pleading. Attachment 1 is the transcript of the December 12, 1980 suppression hearing before Judge Spellman (DE 31). Attachment 4 is the transcript of the February 13, 1981 suppression hearing before Magistrate Judge Palermo (DE 30). Attachment 5 is the transcript of the March 31, 1981 suppression hearing before Magistrate Judge Palermo (DE 32). The ten attachments to this pleading are ordered chronologically, by date of occurrence, which does not necessarily correspond to the date of docket entry. A table of the attachments is appended as a final footnote to this pleading.

[3] In 1980, Fed.R.Crim.P. 26.2 and 12(h) had not been implemented, and Jencks material was not producible at a suppression hearing. *See, e.g., United States v. Bernard*, 623 F.2d 551 (footnote continued)

Furthermore, at DE 31, page 23, the prosecutor explained that testimony elicited from the customs inspector that day would include facts subsequent to those pertinent to the motion to suppress, because they were "relevant to the Government's case in chief, and since counsel announced she would stipulate to testimony as testimony of the case in chief, I suggest I should elicit that testimony to save time." Defense counsel did not object, and the court agreed.

Indeed, the defendant's plan to stipulate to the suppression-hearing testimony as the basis for a bench trial was broached even before the December 12, 1980 hearing. In a pleading filed Jan. 22, 1981, *see* DE 11, attached as Attachment No. 2, defense counsel described a November 26, 1980, pre-trial hearing at which the court scheduled the suppression hearing for December 12, 1980, and at which "it was agreed by all parties that the testimony elicited at that proceeding would constitute the bench trial testimony as well." *See* DE 11 (Attachment 2) at paragraph 1. *See also* DE 11 at paragraphs 2 and 3, where the defense acknowledged the government's production of Jencks material at the suppression hearing, and the eliciting of more extensive testimony at that hearing in light of the "dual purpose and nature of the proceeding." *See also* DE 11 at paragraph 10, where defense counsel argued that the December 12, 1980, suppression hearing was conducted "with the understanding that the same testimony basically constitute the

---

(footnote continued)

(9th Cir. 1980)(requirement to produce Jencks material defined by 18 U.S.C. Section 3500, whose prescription for production "in the trial of the case" does not include pre-trial suppression hearings). The production of Jencks material at the December, 1980, hearing evinced the parties' understanding that testimony at that hearing would serve as trial testimony as well.

4

trial testimony" and referred to "the two-fold posture of the proceedings."

The gravamen of this defense pleading was an objection to Judge Spellman having referred to Magistrate Palermo the ongoing consideration of the suppression motion. Judge Spellman overruled this objection, *see* DE 19, attached as Attachment No. 3, and in doing so further confirmed the defense's plan to proceed to a non-jury trial based on the suppression-hearing record, should the suppression motion be denied. Judge Spellman acknowledged the defendant's arguments related to a "future bench trial," *see id.*, but noted that the defendant had not yet waived her right to trial by jury nor yet sought a bench trial.

Heeding Judge Spellman's admonition, the defendant cured that deficiency, clearing the way to a bench trial. Following denial of the Motion to Suppress, *see* DE 26, copy attached as Attachment No. 6, Judge Spellman issued an order, *see* DE 25, copy attached as Attachment No. 7, setting the case for criminal jury trial for the two-week calendar beginning June 1, 1981; for calendar call May 28, 1981; and for pretrial conference May 21, 1981.

The May 21, 1981, pretrial conference was not transcribed,[4] but other records reflect what happened that day. First, the very fact that a pretrial conference, distinct from the calendar call, was set for such a simple case evinces the court's anticipation of a non-jury trial outcome. Second, the defendant, defense counsel and prosecutor that day executed a Waiver of Jury and Special Findings, DE 29, copy attached as Attachment No. 8. The defendant signed the

---

[4] Judge Spellman's regular court reporter at the time, Mario Contillo, is deceased. Undersigned counsel caused the court's archives to be searched for the reporter's untranscribed notes, to no avail.

instrument that "hereby waives the right to a trial by jury and requests the Court to try all charges against him in this case without a jury." Defense counsel signed the representation that the defendant's "above waiver of trial by jury" was voluntary and understandingly made. On the same page, the prosecutor consented "that the case be tried without a jury." Third, the docket sheet entry for the proceedings that day, not numbered, states that the defendant's criminal non-jury trial was commenced and concluded that day, resulting in conviction on both counts. Fourth, Judge Spellman's June 4, 1981 order denying, *nunc pro tunc*, a defense May 21, 1981, Motion to Dismiss the Indictment based on the Speedy Trial Act, noted the speedy-trial excludability of time from the defendant's arrest "until her trial." *See* DE 34, attached as Attachment No. 9. Fifth, the court's Judgment and Commitment Order, DE 37, recited that the defendant was found guilty after having pled NOT GUILTY (as opposed to checking an alternative choice for plea of "GUILTY, and the court being satisfied that there is a factual basis for the plea"), attached as Attachment No. 10.[5]

     Based on the record, it is clear, and uncontradicted by anything else in the record, that on May 21, 1981, the defendant followed exactly the course counsel had forecast nearly six months earlier, agreeing to and undergoing a bench trial – that is, a non jury trial, in the words of the docket entry – based on the testimony that had already been adduced at the suppression-hearing

---

[5] DE 37 is a clearly legible copy of the original Judgment and Commitment order. The copy appended to the defendant's pleadings, *see, e.g.,* Docket Entry 49-1, Exhibit A, appears to be a copy of a carbon copy that makes it appear that there was a "verdict" of guilty; DE 37, the clear copy, makes it plain that there was a "finding" of guilty.

proceedings. This bench trial did not take long, since Judge Spellman already was familiar with the suppression-hearing transcripts, and since the evidence was plain and overwhelming that the defendant had imported, and possessed with intent to distribute, cocaine. The defendant did not plead guilty, but rather proceeded to a non-jury trial at which she was convicted by Judge Spellman. There was no clerical error; there is no support for the proposition that the defendant ever changed her plea from not guilty to guilty; and there is no basis for the instant Motion to Correct Clerical Error.

The record of the defendant's recent Motions to Correct also illuminates why she did what she did. Ms. Kemper's affidavit of September 3, 2005, *see* DE 49-2 Exhibit B pages 3-4, clarifies that the defendant sought to avoid the automatic deportation that she anticipated would follow if she pled guilty, as opposed to continuing at least facially to dispute the charges in criminal court so that she could continue to resist the allegation in immigration court as well. As Ms. Kemper stated:

> In the general atmosphere of the times then, Ms. Manns' status as a non-citizen, resident alien, presented an additional unique problem which was that if she were directly pled, it was almost an automatic deportation possibility since she could not argue or disavow her plea. Not that a plea of not guilty and a subsequent finding of guilt could not have resulted in the same then, but it might not in those times have necessarily been that automatic.

Ms. Manns' strategy served her well. Taking an essentially non-adversarial posture before Judge Spellman, she received a light, pre-Guidelines sentence of a year and a day incarceration. (Under current law, the advisory guideline range for importation and possession with intent to distribute 1,634 grams of cocaine, with no adjustments, would be Level 26, or 63-78 months with no criminal history.) She also evidently was able to continue to reside in the United States for many

years; the record is silent as to disposition of her immigration status at that time.

More recently, however, the defendant left the country, and on trying to re-enter was prevented due to her record of conviction, and was placed in removal proceedings. *See* DE 49 paragraph 11. In these recent proceedings the position that served her interests three decades ago – declining to plead guilty in hopes of avoiding deportation – was no longer convenient, as she sought to take advantage of a provision, pursuant to former 8 U.S.C. 1182(a), allowing the prospect of relief from removal for certain convicted persons who had pled guilty. Accordingly, she seeks to change the record of her 30-year-old case to reflect that she pled guilty, rather than having been found guilty at trial notwithstanding her plea of not guilty. *See Ferguson v. United States Attorney General*, 563F.3d 1254 (11th Cir. 2009)(removal-waiver provision not available to persons who did not plead guilty and instead were convicted after a trial).

The change the defendant seeks cannot be made. The time when the court may act substantively in this matter has long passed. Defendant cites Fed.R.Crim.P. 36 and Fed.R.Civ.P. 60, but these are provisions for correction of clerical error, plain on the record and undisputed by the parties. Here, where there is no error at all, these rules cannot be a vehicle to work a substantive amendment of the record, and of the history of the proceedings here, to retroactively change a plea from not guilty to guilty, 30 years later. Cases cited by the defendant do not assist her claim. For instance, *United States v. Mosbrucker*, 340 F.3d 664, 665 (8th Cir. 2003), notes that civil Rule 60 is not a substitute for appeal; here, too, if the defendant felt that Judge Spellman wrongly interpreted the events of May 21, 1980, the time to appeal was many years ago. *United States v. Mansion House Center*, 855 F.2d 524 (8th Cir. 1988) recognized that Rule

60 may properly be used "to reflect what was understood, intended and agreed upon by the parties and the court," *id.* at 527. The record here is clear is that what the parties understood, intended and agreed upon was a non-jury trial; *see* Attachment No.9, DE 29, in which the defendant, Ms. Kemper and the prosecutor all signed a Waiver of Trial that made explicit the defendant's request for a non-jury trial. *United States v. Stewart*, 770 F.2d 825 (9th Cir. 1985) and *Lam Man Chung v. United States*, 419 F.Supp. 1287 (S.D.N.Y. 1976) also are inapposite. In *Stewart* the record contained an ambiguity that needed to be clarified; here there is no ambiguity. In *Lam Man Chung* the sentencing court corrected what it recognized as a clerical error as to what was the offense of conviction; here not only did Judge Spellman not see any error, he reinforced that the defendant indeed was convicted following "her trial," in his order of June 4, 1981, denying motion to dismiss, *see* DE 34; *see* Attachment No. 9. *See also United States v. Smith*, 2006 WL 3042956 (D. Virgin Islands 2006)(Fed.R.Civ.P. 60 encompasses only errors mechanical in nature, apparent on the record, and not involving a substantive error in judgment; distinguishing *Mosbrucker*); *In re Transtexas Gas Corporation*, 303 F.3d 571, 581-582 (5th Cir. 2002)(Fed.R.Civ.P. 60 provides a specific and very limited type of relief, where the record makes apparent that the court intended one thing but by merely clerical mistake or oversight did another; "[s]uch a mistake must not be one of judgment or even of misidentification, but merely of recitation, of the sort that a clerk or amanuensis might commit, mechanical in nature"); *United States v. Ranney*, 298 F.3d 74, 81 (1st Cir. 2002)(Fed.R.Crim.P. 36 "applies to straightforward clerical and technical errors; it is not meant to provide an opening for litigation over the merits", and is generally inapplicable to judicial errors and omissions).

Nor is any hearing, or further evidentiary development, called for. While the defendant's recent *pleadings* – see DE 49, 54 – speak of her having pled guilty, and entered a plea agreement, the actual evidentiary support submitted by the defendant is more circumspect, does not assert that she pled guilty, and is consistent with the government's characterization of the record. That is, Ms. Kemper, the defense attorney who conducted the defendant's case, nowhere claims that the defendant pled guilty. Rather, Ms. Kemper's affidavit explains why the defendant did *not* plead guilty. *See, e.g.,* Kemper affidavit of September 3, 2005, DE 49-2 at page 4 of 4: "In order to protect her from the direct consequences of a guilty plea," counsel requested use of suppression-hearing testimony as if given at trial. Ms. Kemper also states in her affidavit that the defendant's proceeding was "tantamount" to a guilty plea, *see* Kemper affidavit of June 6, 2008, DE 49-2 at paragraphs 4, 5(b), but does not assert that the defendant actually pled guilty. In actuality the defendant persisted in her plea of not guilty, and no amount of argument that she was not resisting conviction would allow this court to change her plea from not guilty to guilty, 30 years later – especially where the defendant's choice to persist in the plea of not guilty was deliberate, and done for tactical advantage with regard to her immigration status. *See* Kemper affidavit of September 3, 2002, DE 49-2 at page 3 of 4.

This record reflects at numerous places that the defendant was convicted at a non-jury trial, having persisted in a plea of not guilty. This is indicated in the record of proceedings prior to the non-jury trial (*e.g.,* the suppression hearing, defense motion, and court order noting or discussing the defendant's plan to stipulate to the hearing-testimony as a bench trial); after the non-jury trial (e.g. Judge Spellman's June, 1981, order referencing "her trial", and the Judgment

and Commitment Order reflecting her not-guilty plea); and contemporaneous with the proceedings of May 21, 1981, when the non-jury trial was conducted (e.g., the executed Waiver of Jury form, and the docket entry recording the criminal non-jury trial and its outcome). These numerous, consistent reference to her non-jury trial are not errors, and her own attorney's affidavit supports that she did not plead guilty. The Motion to Clerical Error is not well founded.

WHEREFORE, based on the foregoing, the United States respectfully submits that the defendant's Motion to Correct Clerical Error should be denied.[6]

Respectfully submitted,

---

[6] Table of attachments:

| Att.# | DE | Date | Item |
|---|---|---|---|
| 1 | 31 | 12/12/1980 | Transcript of suppression hearing before Judge Spellman |
| 2 | 11 | 1/22/1981 | Defendant's Motion Objecting to Referral of Cause to Magistrate |
| 3 | 19 | 1/30/1981 | Order Denying Motion Objecting to Referral of Cause to Magistrate |
| 4 | 30 | 2/13/1981 | Transcript of suppression hearing before Magistrate Judge Palermo |
| 5 | 32 | 3/31/1981 | Transcript of suppression hearing before Magistrate Judge Palermo |
| 6 | 26 | 5/7/1981 | Order Denying Motion to Suppress |
| 7 | 25 | 5/13/1981 | Order Setting Trial and Pretrial Conference |
| 8 | 29 | 5/21/1981 | Waiver of Jury and Special Findings |
| 9 | 34 | 6/4/1981 | Order Denying Motion to Dismiss |
| 10 | 37 | 7/8/1981 | Judgment and Commitment Order |

11

        WIFREDO A. FERRER
        UNITED STATES ATTORNEY

By:   /s/   Caroline Heck Miller
       CAROLINE HECK MILLER
       Assistant United States Attorney
       Fla. Bar No. 0322369
       (305) 961-9432
       (305) 530-6168 Facsimile

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 21, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, for uploading and service by electronic notice to counsel and parties authorized to receive electronically Notices of Electronic Filing.

       /s/   Caroline Heck Miller
       Caroline Heck Miller
       Assistant U.S. Attorney